CUDAHY (JOHN), Respondent, vs. TAX COMMISSION and others, Appellants.

*November 11—December 7, 1937.*

For the appellants there were briefs by the *Attorney General, Harold H. Persons,* assistant attorney general, *C. Stanley Perry,* assistant corporation counsel of Milwaukee county, attorneys, and *T. Carroll Sizer* of Madison of counsel, and oral argument by the *Attorney General, Mr. Persons, Mr. Sizer,* and *Mr. John S. Best* of Madison.

For the respondent there was a brief by *Miller, Mack & Fairchild,* and oral argument by *Frederic Sammond* and *Herbert C. Hirschboeck,* all of Milwaukee.

ROSENBERRY, C. J.    Many of the questions involved upon this appeal were considered and decided in the case of *Cudahy (Michael F.) v. Tax Comm., ante,* p. 317, 276 N. W. 748. It will be useful in this case to state only those facts and considerations which disclose the additional questions to be considered in this case.    These facts are stated by the Tax Commission as follows :

.It is to be kept in mind that John Cudahy, hereinafter called the "taxpayer," owned personally 2,210 shares of stock of Northern Refrigerator Car Company, hereinafter called the "Car Company;" that he owned 100 per cent of the stock of the Callan Investment Company, hereinafter called "Callan Company" (his personal holding company organized under the laws of the state of Delaware), which in turn owned 5,490 additional shares of stock of Car Company.

In reviewing the steps to accomplish the reorganization contemplated by the agreement of November 27, 1928 (see opinion in *Michael F. Cudahy Case),* it will be noted that different methods were followed in the exchange of these separate holdings of Northern Refrigerator Line Company, hereinafter called "Line Company."    The transactions involved in these changes will be set out in chronological order. January 12, 1929 :

(1)  Custer Investment Company (hereinafter referred to as "Custer Company") was organized under the laws of

Wisconsin. Its capital stock consisted of 100 shares of common stock.

January 16, 1929:

(1) Custer Company issued all of its capital stock, amounting to 100 shares, to Callan Company in exchange for the 5,490 shares of Car Company stock held by Callan Company. The Car Company stock so transferred to Custer Company represented 64.64 per cent of the total assets of Callan Company.

(2) The 100 shares of Custer Company stock were immediately transferred by Callan Company to John Cudahy, its sole stockholder, as a dividend. John Cudahy did not relinquish any of his stock in Callan Company.

(3) Custer Company transferred the 5,490 shares of Car Company stock to Line Company in exchange for 8,034 shares of Line Company preferred stock. The Car Company stock transferred to Line Company constituted 100 per cent of the assets of Custer Company. The Line Company preferred stock issued to Custer Company represented 12.91 per cent of the total authorized issue of Line Company preferred stock.

(4) The 8,034 shares of Line Company preferred stock were immediately transferred by Custer Company to John Cudahy, its sole stockholder, as a liquidating dividend. Custer Company was then dissolved.

(5) Line Company received 23,650 shares of Car Company stock from Northern Investment Company, a corporation owned and controlled by Michael Cudahy, in exchange for 34,612 shares of Line Company preferred stock and all of Line Company common stock amounting to 10 shares.

As a result of these transactions which took place on January 16, 1929, Line Company acquired 29,140 shares of Car Company stock.

January 22, 1929:

(1) Line Company issued to Car Company its remaining 19,554 unissued shares of preferred stock and acquired all of the assets of Car Company. In this manner, Car Company acquired 31.43 per cent of the total outstanding Line Company preferred stock.

(2) Aside from the Car Company stock held by Line Company, Car Company had outstanding 13,360 shares of its own capital stock. Of this amount, John Cudahy personally held 2,210 shares. Immediately, on receipt of these 19,554 shares of Line Company preferred stock, Car Company distributed this Line Company stock to its stockholders, other than Line Company. Car Company was then dissolved. The 2,210 shares of Car Company stock held personally by John Cudahy had a cost basis of $220,097.80. In exchange for this stock, John Cudahy received 3,234 shares of Line Company preferred stock which, by stipulation, had a total value of $281,358. As a result of this transaction, John Cudahy realized a profit of $61,260.20.

Prior to any of the foregoing detailed transactions, the taxpayer owned or controlled 18.11 per cent of the stock in Car Company; as a result of these various transfers the taxpayer acquired 18.11 per cent of the Line Company preferred stock. The entire assets of Car Company passed to and became the property of Line Company. By surrender of the 10 shares of voting stock held by Michael F. Cudahy and the issuance of 30,000 shares of common stock, the control of Line Company was vested in Dispatch Company, as stated in the *Michael F. Cudahy Case* opinion. In 1929, the taxpayer sold 2,400 shares of Line Company preferred stock for $204,400. In 1930, he sold 1,000 shares of Line Company preferred stock for $90,000. On March 17, 1933, the taxpayer was given notice of an additional assessment on income for the year 1929, arising out of his receipt of preferred stock from Line Company as liquidating dividends from Custer Company. Included in this notice of additional assessment were adjustments of his income due to the sales of Line Company preferred stock by him in 1929 and 1930. An objection to this assessment was entered within the statutory period. Subsequently, and on November 21, 1933, the taxpayer was notified of a further additional assessment of income for the year 1929, arising out of a block of stock of Line Company

received by him directly from Car Company. A hearing was had in this case before the income tax board of review of Milwaukee county on November 27, 1933. From the determination of the board, the assessor of incomes appealed to the Tax Commission. The Tax Commission directed an additional assessment and an adjustment of the tax due to the sales in 1929 and 1930.

The taxpayer owned 2,210 shares of Car Company stock which had cost him $220,097.80. In exchange for this stock the taxpayer received from Car Company by way of Custer Company 3,234 shares of Line Company preferred stock. The Tax Commission held that the 3,234 shares of Line Company stock so transferred by the Car Company to the taxpayer constituted a liquidating dividend and was not deductible by the taxpayer under sec. 71.04 (4), Stats., in effect holding that the securities so issued to and received by the taxpayer were not received in pursuance of a plan of reorganization. Considered by itself, the transaction undoubtedly resulted in taxable gain.

It is to be noted, however, when the several transactions are considered as a whole, that those who owned and controlled the stock of Car Company prior to November, 1928, after the transaction was completed on January 16, 1929, had the same proportional interest in Line Company that they had previously had in Car Company; that Line Company owned all of the assets previously owned by Car Company; that the business theretofore conducted by Car Company was being continued by Line Company; and that the exchange was effected solely by the exchange of securities in one corporation for those of another. When a reorganization takes place under such circumstances there arises a very strong inference that the statute has been substantially complied with. Certain it is, that it cannot be held to fall within the condemnation of *Helvering v. Gregory* (C. C. A., 2d Cir. 1934),

69 Fed. (2d) 809, 811, or *Gregory v. Helvering* (1935), 293 U. S. 465, 55 Sup. Ct. 266, 79 L. Ed. 596. It is true that the Custer Company was organized to facilitate the transfer of the Callan Company assets to the taxpayer, and in that respect its function was identical with that of the Averill Company in the *Gregory Case,* but there the analogy ends. In the *Gregory Case* there was no reorganization contemplated. Here a reorganization was contemplated and was in fact effected. The assets and business of Car Company became the property of Line Company as already pointed out. Those who had interests in Car Company had identical interests in Line Company. The purpose of the reorganization was to divest control and management from ownership. This was accomplished when 5,000 shares of common stock were issued to Dispatch Company on January 30, 1929.

Considered as a whole, the facts bring this case squarely within the rationalization of the section set out by the court in *Helvering v. Gregory, supra.* The court said:

"The purpose of the section is plain enough; men engaged in enterprises—industrial, commercial, financial, or any other —might wish to consolidate, or divide, to add to, or subtract from, their holdings. Such transactions were not to be considered as 'realizing' any profit, because the collective interests still remained in solution. But the underlying presupposition is plain that the readjustment shall be undertaken for reasons germane to the conduct of the venture in hand, not as an ephemeral incident, egregious to its prosecution."

Viewed as a whole, the sole end attained by the reorganization in this case was as already pointed out a separation of management and control from ownership. The taxpayer and other stockholders in Car Company subtracted from their holdings the present right to manage and control the business theretofore operated by Car Company. Their interest in the physical assets was unchanged and the transaction resulted in no taxable gain to the taxpayer in 1929.

In this case as in the *Michael F. Cudahy Case* there was a claim for refund or readjustment. The status of this case in that respect is similar to the status of the claim for refund in the *Michael F. Cudahy Case* and the same mandate will be entered in this case as was entered in that case.

*By the Court.*—That part of the judgment holding the additional assessment illegal and canceling the same is hereby affirmed; that part of the judgment which in effect denied the taxpayer's claim to a refund is reversed, and the cause remanded to the circuit court with directions to determine the right of the taxpayer to the claimed refund.